IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

KATHLEEN DENARIO,

                Plaintiff,        Civil Action No.
                                              3:17-CV-0037 (TJM/DEP)

   v.

VILLAGE OF STAMFORD, *et al.*,

                Defendants.

---

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

KATHLEEN DENARIO, *Pro Se*
13651
Mid-Hudson Forensic Psychiatric Center
2834 Route 17 M
New Hampton, NY 10958

FOR DEFENDANTS

NONE

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT, RECOMMENDATION, AND ORDER

    *Pro se* plaintiff Kathleen Denario has commenced this action against a village in New York State, a county treasurer, and a county jail purportedly pursuant to 42 U.S.C. § 1983. The clerk of the court has forwarded to me

plaintiff's complaint and application to proceed in the action *in forma pauperis* ("IFP") for review pursuant to 28 U.S.C. § 1915(e). For the reasons set forth below, plaintiff's IFP application is granted, and I recommend that her complaint be dismissed with leave to file an amended complaint.

I.      BACKGROUND

Plaintiff's complaint, which is rambling and difficult to decipher, appears to involve allegations arising out of two entirely separate sets of facts. *See generally* Dkt. No. 1. Plaintiff first alleges that in or about 2015, defendant Beverly Shields, the Delaware County Treasurer, and defendant Village of Stamford unlawfully obtained possession of her property located at 65 Main Street, Stamford, New York, 12167 ("Main Street property"). *Id.* at 4-9. In particular, she contends that, although she paid Delaware County $8,200 in "back taxes" applicable to the Main Street property, defendant Shields nonetheless "ordered local village water bill collector not to accept $200.00 water bill payment so she would be able to call [the Main Street property] uninhabitable." *Id.* at 4. According to plaintiff, she and defendant Shields had an agreement that, if plaintiff paid the county $8,200, defendant Shields would return the Main Street property to plaintiff's name. *Id.* at 5. Plaintiff alleges that she "satisfied the agreement [between her and defendant Shields] with the $8,200 payment." *Id.* According to plaintiff's

complaint, defendant Shields sold the Main Street property to defendants Lawrence Burns and Craig Rowe, in violation of their agreement.[1] *Id.* at 7. Plaintiff contends that, although she filed a request for an order of protection against defendants Shields and Village of Stamford in Delaware County Court in an effort to stop the sale of the Main Street property, the action was dismissed. *Id.* at 6. Defendants Burns and Rowe thereafter commenced eviction proceedings against plaintiff following her refusal to move out of the Main Street property. *Id.* at 9. Plaintiff's complaint alleges that Town of Stamford Town Justice, Jaqueline Lamport, decided in favor of defendants Burns and Rowe, and ordered plaintiff to pay the new owners $1,500. *Id.*

Plaintiff contends that, as a result of the sale of the Main Street property and ensuing purchase of the property to defendants Burns and Rowe, she suffered "a nervous breakdown and ended up in a mental hospital[.]" *Id.* at 8. With respect to this aspect of plaintiff's complaint, plaintiff requests the following as relief:

> I am respectfully asking the court to intervene, investigate and grant me my building back and money damages for my lost belongings, rent, retirement, apartment building and mental anguish which caused me to be hospitalized twice.

---

[1] Plaintiff's complaint does not specifically identify Burns and Rowe as defendants in either the caption or in the section of the form complaint where a space is provided to list separate defendants. Dkt. No. 1 at 1-2. In the body of plaintiff's complaint, however, she explicitly requests to "name Craig Rowe[ and] Lawrence Burns," which I have construed as plaintiff's intention to name those individuals as defendants. *Id.* at 9.

3

> It would also be nice if some one would monitor Delaware County treasurer so she would stop stealing peoples [sic] properties.
>
> . . . Also Judge Jaqueline Lamport's decision for me to pay Craig Rowe and Lawrence Burns $1500. May that judgement [sic] be reversed.

*Id.* at 9.

The second set of facts included in plaintiff's complaint arise from plaintiff's incarceration at the Albany County Jail, the only defendant named in this part of plaintiff's pleading. Dkt. No. 1 at 10-13. Plaintiff alleges that on or about October 23, 2016, she fell in her cellblock as she was getting up from the toilet. *Id.* at 10. As she fell to the ground, plaintiff hit her head and broke her tooth. *Id.* She alleges that she remained unconscious on the floor of her cellblock for approximately two hours. *Id.* Although at least two corrections officers and another unidentified woman saw plaintiff laying on the ground, no one called for medical assistance on her behalf. *Id.* Three hours later, however, plaintiff was transported to the infirmary, where, she alleges, the doctor did not treat her. *Id.* at 11. The next day, plaintiff was sent back to the infirmary because of the swelling from her broken tooth, and she was provided antibiotics. *Id.* at 11-12. Plaintiff also saw a dentist, who only "gave [her] salt." *Id.* at 12.

In addition, while confined in defendant Albany County Jail, plaintiff

4

contends that she was issued a false misbehavior report, which resulted in her remaining "locked in a cell [for] 23 hours a day" or more. Dkt. No. 1 at 12. Plaintiff further alleges that she was refused recreation on occasion by a corrections officer named "Joseph." *Id.* Although plaintiff submitted a sick-call request every day for her broken tooth and spinal injury,[2] "they did absolutely nothing for any of [her] injuries complete negligence [sic]." *Id.* at 12-13. Finally, while plaintiff was in disciplinary confinement stemming from the allegedly false misbehavior report, one inmate spit on her and another threw urine on her. Corrections officers identified as "John," "Matt," "Darren," and "Jay" were all working at the time the inmates assaulted plaintiff. *Id.* As relief for the incidents arising out of her confinement in the Albany County Jail, plaintiff seeks "money for [her] injuries," permission to press criminal charges against the individuals that assaulted her, and "money to fix [her] broken tooth." *Id.* at 13.

---

[2]   Plaintiff alleges she injured her spine at work just prior to her incarceration. Dkt. No. 1 at 12.

## II. DISCUSSION

### 1. Plaintiff's IFP Application

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a).[3] A court is authorized, however, to permit a litigant to proceed IFP if it determines that she is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). In this instance, because I conclude that plaintiff meets the requirements for IFP status, her application for leave to proceed without

---

[3] The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

In addition, section 1915(a)(2) requires that prisoner-plaintiffs applying for IFP status must submit "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . ., obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). Failure to provide this certification in conjunction with a prisoner-plaintiff's IFP application ordinarily results in the denial of the plaintiff's request. N.D.N.Y. L.R. 5.4(b)(1)(A). In this instance, the certification portion of plaintiff's IFP application has not been signed by an authorized official. Dkt. No. 2 at 2. This is not to plaintiff's request fatal, however, because it does not appear that plaintiff is an inmate subject to the certification requirement. Plaintiff has listed her address as the Mid-Hudson Psychiatric Center, and publically available records indicate that she is no longer in the custody of the Albany County officials. VINELink, https://www.vinelink.com/#/searchResults/1 (last visited Feb. 8, 2017). In deference to plaintiff's *pro se* status, I have assumed that plaintiff is not confined in the Mid-Hudson Psychiatric Center for penal purposes and that plaintiff submitted the Inmate Authorization form, Dkt. No. 3, by mistake.

prepayment of fees is granted.[4]

    2.    <u>Analysis of Plaintiff's Complaint</u>

        a.    <u>Standard of Review</u>

Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in her complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.

---

[4] Plaintiff is reminded that, although her IFP application has been granted, she will still be required to pay fees that she incurs in this action, including copying and/or witness fees.

7

2007) ("We have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis*.").

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'" *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also*

8

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

  b. <u>Analysis</u>

    i. <u>Plaintiff's Claims Asserted Against Defendants Shields, Village of Stamford, Burns, and Rowe</u>

Plaintiff, who has utilized a form complaint intended for use in legal actions commenced pursuant to 42 U.S.C. § 1983, purportedly asserts claims against defendants Shields, Village of Stamford, Burns, and Rowe under that provision. Section 1983 "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. VA*

10

*Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). It "'is not itself a source of substantive rights[,] . . . but merely provides 'a method for vindicating federal rights elsewhere conferred[.]'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). In order to state a claim pursuant to section 1983, a plaintiff must allege "(1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). In this case, however, plaintiff has failed to identify any federal right of which she was deprived by any of the named defendants. Indeed, plaintiff's complaint alleges that defendants Shields and Village of Stamford violated a written agreement between defendant Shields and plaintiff when they unlawfully took possession of the Main Street property and sold it to defendants Burns and Rowe. Dkt. No. 1 at 4-8. This allegation, which, at best, gives rise to a breach of contract claim under New York State common law, does not trigger any federal right. With respect to defendants Burns and Rowe, the basis of plaintiff's claims against those two individuals is entirely unclear. In any event, fatally, there are no allegations in the complaint plausibly suggesting that either of those individuals are state actors or acted on

11

behalf of the state, which is an essential element of a section 1983 cause of action. *See, e.g., Gentile v. Republic Tobacco Co.*, No. 95-CV-1500, 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (Pooler, J.) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774, 776 (N.D.N.Y. 1994) (McAvoy, J.)).

As for any cause of action that could be construed to have been asserted in plaintiff's complaint that explicitly seeks reversal of Justice Lamport's decision ordering plaintiff to pay defendants Burns and Rowe $1,500, Dkt. No. 1 at 9, such a claim is barred by the *Rooker-Feldman*[5] doctrine, which recognizes that, except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). Under the *Rooker-Feldman* doctrine, a district court lacks jurisdiction to consider a plaintiff's claim when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen*, 626 F.3d at 154 (citation omitted). The *Rooker-Feldman* doctrine relates to "lack of subject matter jurisdiction, and may be raised at any time by either party or sua sponte by the court." *Moccio v. N.Y.S. Office of Court*

---

[5] *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

*Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (citations omitted), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). In this case, plaintiff requests that the district court reverse Justice Lamport's decision that directed her to pay defendants Burns and Rowe $1,500, thereby explicitly inviting review of that state-court determination. In light of *Rooker-Feldman*, this is not permitted.

For all of these reasons, I recommend that plaintiff's claims asserted against defendants Shields, Village of Stamford, Burns, and Rowe, as well as any claims seeking reversal of Justice Lamport's decision, be dismissed.

ii.     Plaintiff's Claims Asserted Against Defendant Albany County Jail

With respect to plaintiff's allegations arising out of her confinement at the Albany County Jail, plaintiff has named only the jail as a defendant. Dkt. No. 1 at 2. The Albany County Jail, however, is not a separate entity amenable to suit. *See, e.g., Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). For purposes of this report, I have assumed that plaintiff's conditions of confinement claims are asserted against Albany County.

A municipal entity may be held accountable for a constitutional violation that has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the

13

municipality's] officers . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). Municipal liability can be established in various ways, including through "proof of an officially adopted rule or widespread, informal custom[] [demonstrating] 'a deliberate government policy or failing to train or supervise its officers.'" *Bruker v. City of N.Y.* 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (quoting *Anthony v. City of N.Y.*, 339 F.3d 129, 140 (2d Cir. 2003)). A plaintiff may also show that the allegedly unconstitutional action was "taken or caused by an official whose actions represent an official policy," *Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir. 2000), or when municipal officers have acquiesced in or condoned a known policy, custom, or practice that violates federal law. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004); *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.").

In this case, plaintiff's complaint is entirely devoid of any allegations

plausibly suggesting that defendant Albany County Jail promulgated a policy or practice that resulted in a violation of plaintiff's constitutional rights. Accordingly, I recommend that plaintiff's claims asserted against defendant Albany County Jail be dismissed.

### C.    Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that

granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, it is possible that the deficiencies identified above with respect to plaintiff's causes of action could be cured with better pleading. Accordingly, I recommend plaintiff be granted leave to amend her complaint.

If plaintiff chooses to file an amended complaint, she should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, plaintiff must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific

involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

## III.   SUMMARY, ORDER, AND RECOMMENDATION

Upon review of plaintiff's IFP application, I have determined that she qualifies for leave to proceed without prepayment of fees. Plaintiff's complaint, however, suffers from a number of defects and, as currently constituted, fails to state a claim upon which relief may be granted. Accordingly, it is hereby

ORDERED that plaintiff's *in forma pauperis* application, Dkt. No. 2, is GRANTED; and it is further respectfully

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be DISMISSED with leave to amend.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[6] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:   February 8, 2017
         Syracuse, New York

*[signature]*
David E. Peebles
U.S. Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

18